# EXHIBIT 1

RECEIVED
STATE OF NEW HAMPSHIRE
SUPERIOR COURT

Rockingham County                                    2011 JUL -5 P 2: 0 JULY 2011

Roy Bellofatto
1756 Tulip Street
Longmont, CO 80501

v.

Salem Ford, LLC, d/b/a
Key Auto Group/Salem Ford Hyundai
470 S. Broadway, Salem, NH 03079
and

Ronald Verdonck
34 Bannister Road
Salem, New Hampshire 03079

## PETITION FOR EQUITABLE RELIEF ARISING FROM EMPLOYMENT DISCRIMINATION, PURSUANT TO THE AMERICAN WITH DISABILITIES ACT, AS AMENDED
AND
WAGE CLAIMS UNDER RSA 275
AND
WRONGFUL CONSTRUCTIVE TERMINATION
AND
NEW HAMPSHIRE WHISTLEBLOWER'S PROTECTION ACT
AND
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
AND
## A REQUEST FOR JURY TRIAL FOR ALL MATTERS SO TRIABLE

### I. INTRODUCTION

1. This action is brought in part under The Americans With Disabilities Act of 1990 42 U.S.C. § 12117,(ADA), as Amended, which incorporates by reference the powers, remedies and procedures of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq, and, for actions occurring on and after January 1, 2009, including

1

under the ADA Amendments Act of 2008 (Counts I-IV); the N.H. Wage Claim Statute, NHRSA 275 (Count V) and the N.H. common law of wrongful termination (Count VI), the N.H. Whistleblower's Protection Act, N.H.R.S.A. 275-E (Count VII); and the N.H. common law of intentional infliction of emotional distress, (Count VIII).

## II. THE PARTIES

2. (a) Plaintiff, Roy Bellofatto is an adult male presently residing at 1756 Tulip Street, Longmont, Colorado, who at times relevant and contemporaneous to the allegations, lived in New Hampshire, including, at 43 Jefferson Street, Nashua, NH 03060

(b) who was employed as a Body Shop Technician by Defendant Salem, Ford, LLC from about March 25, 2008 through January 9, 2009.

(c) who at all times during his employment with Salem Ford, LLC was a "qualified individual with a disability" under 42 U.S.C. § 12111(8) who could, with or without reasonable accommodation, perform the essential functions of the position of his job with Salem Ford, LLC.

3. (a) Key Auto Group/Salem Ford Hyundai is a d/b/a of Salem Ford, LLC, ("Salem Ford" and/or "The Company" and/or "The Employer") a car dealership sales, service and body repair shop located at 470 South Broadway, Salem, New Hampshire

(b) Salem Ford is a "person" within the meaning of the ADA, 42 U.S. C. § 1211 and § 701(a) of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

(c) Salem Ford is an "industry affecting commerce" within the meaning of Section 191(7) of the ADA, 42 U.S.C. §12111(7) and Section 701(h) of the Civil Rights Act of 1964, as amended, 42 U.S. C. §2000e(h).

(d) Salem Ford employs 15 or more employees and is "an employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.SC. § 1211(5)(A).

(e) At all times relevant, Salem Ford employed the Plaintiff.

4. Ronald Verdonck is an individual residing, upon information and belief, at 34 Bannister Road, Salem, New Hampshire 03079, who at all relevant times was an employee and agent of Salem Ford, and supervised the Plaintiff while Plaintiff was employed by Salem Ford, and used his power as a supervisor to perform the acts complained about herein.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff timely filed his charge of discrimination with the Equal Employment Opportunity Commission on or about October 27, 2009 and received his Right To Sue Letter (which was mailed by the EEOC, according to the EEOC on April 8, 2011) on or April 11, 2011 **(Attachment A).**

3

## IV. ADDITIONAL FACTUAL ALLEGATIONS

6. During his employment with Salem Ford, Plaintiff suffered from the disabilities of diabetes and morbid obesity.

7. During his employment with Salem Ford, Plaintiff was perceived by his supervisors and one or more co-employees as disabled from

    a. diabetes; and/or

    b. morbid obesity

8. During his employment with Salem Ford, Plaintiff suffered harassment by his supervisors and one or more of his co-employees on account of his

    a. diabetes

    b. morbid obesity

8-a During his employment with  Salem Ford, Plaintiff complained about the harassment and discrimination he suffered, described, infra,  to supervisory personnel, including to Dan Komisarek, supervisor to Plaintiff's supervisor, Defendant Ron Verdonck, only to be threatened with future retaliation.

4

9. During his employment with Salem Ford, Plaintiff suffered retaliation by his supervisors and one or more of his co-employees on account of his complaints of harassment.

10. During his employment with Salem Ford, Plaintiff's supervisors at Salem Ford knew or should have known of the harassment Plaintiff suffered at the hands of his supervisors and one or more co-employees.

11. Plaintiff's co-workers were not subjected to the harassment or wage theft which Plaintiff suffered on account of his obesity, diabetes and demands for wage equity.

12. Plaintiff's discrimination and harassment (both initial and retaliatory harassment) and retaliation were based on his actual and/or perceived disabilities, and his complaints of harassment, which included, but was not limited to, harassment by his supervisor, Ronald Verdonck, who was responsible for and/or aware of these acts and failed to take prompt remedial measures:

a. a stuffed toy rabbit stained red, as bloodied, was hung by a noose in Plaintiff's work area, by his tool box, after Plaintiff told Verdonck that as a child, Plaintiff had an imaginary rabbit, and also by Verdonck's creating and hanging posters of dead rabbits and decapitated rabbits;

5

b. "stealing" Plaintiff's pay by the non-acknowledgement of, and non-payment of, "add ons" as listed Plaintiff's supplemental sheets which itemized the piece work done by him for "hidden damage" in addition to the "obvious damages" to vehicles he was assigned to repair and upon which work his pay was promised.

c. being denied "flag sheet" forms provided to other employees on which they could keep track of their work and hours;

d. being denied supplement sheets and then being ordered to not photocopy the supplement sheets made available to others by which they could record and track their additional billable tasks;

e. being promised by Verdonck's supervisor, Dan Komisarek, that Komisarek would "look into" these matters but who failed to halt the harassment or to remedy the wage theft;

f. being called by Verdonck, "my bitch" (a put down by which a person assumes that women hold a lower status than males and in which that slang/obscene term for woman is used as part of the put down);

g. by Verdonck's creation of obscene and cruel posters directed at the Plaintiff including, but not limited to:

(i) one showing a fat man sitting on a bench whose head was a photo of Plaintiff's head sitting next to another man whose head was a photo of a rabbitt, all of which Verdonck hung around the shop in clear view of employees and management; and

(ii) one showing an obese man masturbating in front of a computer with the caption "Roy busy at home.".

h.  (i) by co-worker Daniel Forrest's hiding of Plaintiff's work tools to the demonstrated amusement of Verdonck and Komisarek who, instead of disciplining Forrest, laughed at his "prank".

(ii) the hiding of the work tools was not only cruel, it cost Plaintiff work time and thus the opportunity to earn money.

i. by Verdonck assigning the Plaintiff to work on Verdnonck's personal vehicles for which Berdnock provided below-rate estimates to cheat Plaintiff out of his correct compensation.

j by referring to Plaintiff as a "fat fuck";

k. by referring to Plaintiff as a "fat diabetic";

l. by Verdonck's failure to require his supervisees to view an anti-discrimination video and, in fact, *warning them away from viewing the video by Verdonck's*

*statements*, including, but not limited to, statements such as "if the employees saw the video, they could not longer harass the 'fat fuck' or 'the spic'."

m. by denying Plaintiff's requested transfer;

n. by Verdonck's mocking Plaintiff's request for a transfer, admitting, "I know you are trying to get a transfer, and that is why you got shit work for a week and a tiny paycheck."

o. by Verdonck's approximately daily "fat jokes" aimed at Plaintiff;

p. by Verdonck's offering of donuts to the known diabetic Plaintiff, who, when reminded that such sugar could send the Plaintiff into a diabetic coma, replied, "Well, then, Take Two."

q. by Verdonck's approval of the scheduling of the company equipment, and failure to intercede to halt the harassment even after Plaintiff notified him of the following:

(i) Forrest precluded the Plaintiff the use of lifts, frame rack and welder equipment, costing him the ability to complete his assignments on a timely basis, thus costing him pay under the piece rate method of Plaintiff's compensation plan; and

8

(ii) As Forrest screamed into Plaintiff's face from a distance of only 6 inches that Plaintiff could not use the frame rack, and that he, Forrest, would be using it for the next three days, with the result that Plaintiff's only job could not be performed, costing him the ability to earn his wages.

r. by Verdonck's refusal to provide the Plaintiff with alternative assignments during Forrest's "hogging" of the company equipment, saying that Plaintiff could not have any more assignments until the large job requiring the use of the equipment being denied him was completed.

13. Plaintiff's wages, in principal part, were based on his performing assigned tasks which each carried a specific pay rate.

14. Plaintiff was unpaid for tens of hours of work each week, as the wages he earned were intentionally improperly and falsely recorded by Verdonck, who kept the document forms from the Plaintiff (which were provided to the other employees) by which Plaintiff could record and check his correct pay" including, but not limited to:

    a.    copies of the supplement sheets created by Plaintiff for submission to the insurance company by which the company was paid for his work were not provided to Plaintiff, nor was he allowed to copy them); and

    b.    flag sheets by which other employees could keep track of their hours.

9

15. Upon information and belief, Verdonck was thus able to divert the money which should have been paid to the Plaintiff to:

    a. the Company as additional profit to make Verdonck and Komisarek look good as managers, to advance their own employment security and to increase their own profit-related bonuses;

    b. to Verdonck;

    c. to other employees by Verdonck.

16. In addition, Plaintiff, upon his hire, had been promised a $1000 sign on bonus, which remains unpaid, and constitutes wages, under New Hampshire law.

17. As a result of the above supervisory and known co-employee harassment, discrimination, retaliation and theft of the opportunity to earn wages and the theft of wages actually earned, plaintiff was forced from his job and was constructively terminated by the company on or about January 9, 2009.

## COUNT I: DISCRIMINATION BASED ON OBESITY AND DIABETES
### Disparate Treatment

18. The above paragraphs are incorporated by reference.

19.     (a) Plaintiff's above-referenced treatment, including, but not limited to the wage theft and discriminatory assignments was because of Plaintiff's disabilities (morbid obesity and diabetes) constitutes disparate treatment and actionable discrimination, as it severely affected Plaintiff's ability to do his job, earn his wages, collect his correct wages, and caused him severe suffering.

(b) Plaintiff's disabilities substantially limit one or more of his major life activities, including, but not limited to:

(i) his diabetes is a disease in which blood glucose levels are above normal and his body's production and use of insulin is not as effective as a non-diabetic's and causes sugar to build in his blood; and and

(ii) his morbid obesity was manifested by his carrying over 100% of his normally appropriate body weight which was evidenced by Plaintiff's inability to walk rapidly, breathe normally, among other manifestations, which obesity was not meaningfully voluntary and followed an automobile accident which resulted in injury which precluded the normal burning of calories

(c) Plaintiff has a record of diabetes and morbid obesity; and

(d) Plaintiff was regarded as having such impairments.

20. This discrimination violates the ADA, 42 U.S.C. §12112(a), and, for acts occurring on or after January 1, 2009, violates the ADA Amendments Act of 2008 (ADAAA)

21. This discrimination was done with malice and reckless indifference to Plaintiff's federally protected rights.

22. Plaintiff's constructive termination entitles him to back pay from the date of his constructive termination under the ADA, including, but not limited to, 42 U.S.C. §12117(a) which incorporates by reference 42 U.S.C. 2000e-5.

23. Plaintiff's discrimination entitles him to recover compensatory damages, including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life pursuant to 42 U.S.C §1981a.

24. Pursuant to 42 U.S.C. § 1981a, Plaintiff also is entitled to recover punitive damages because of Salem Ford's malice and/or reckless indifference to the federally protected rights of Plaintiff.

25. Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorney fees and litigation expenses and costs of this action.

## COUNT 11: HARASSMENT BASED ON OBESITY AND DIABETES

26. The above paragraphs are incorporated by reference.

27. This discrimination violates the ADA, 42 U.S.C. §12112(a), and, for acts occurring on or after January 1, 2009, violates the ADA Amendments Act of 2008 (ADAAA)

28. Said harassment was severe and pervasive.

29. This harassment was done with malice and reckless indifference to Plaintiff's federally protected rights.

30. Plaintiff's harassment entitles him to recover compensatory damages, including front pay, back pay, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life pursuant to 42 U.S.C §1981a.

31. Pursuant to 42 U.S.C. § 1981a, Plaintiff also is entitled to recover punitive damages because of Salem Ford's malice and/or reckless indifference to the federally protected rights of Plaintiff.

32. Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorney fees and litigation expenses and costs of this action.

## COUNT III: HARASSMENT AND DISCRIMINATION BASED ON PERCEIVED DISABILITY.

33. The above paragraphs are incorporated by rerererence.

13

34. Plaintiff was discriminated against by disparate treatment and harassed because the Company's management and employees perceived him as disabled on account of diabetes and obesity.

35. This discrimination violates the ADA, 42 U.S.C. §12112(a), and, for acts occurring on or after January 1, 2009, violates the ADA Amendments Act of 2008 (ADAAA)

36. Said harassment was severe and pervasive.

37. This harassment was done with malice and reckless indifference to Plaintiff's federally protected rights.

38 . Plaintiff's discrimination by disparate treatment and  harassment based on perceived disability entitle him to recover compensatory damages, including front pay, back pay, and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life pursuant to  42 U.S.C §1981a.

39. Pursuant to 42 U.S.C. § 1981a, Plaintiff also is entitled to recover punitive damages because of Salem Ford's malice and/or reckless indifference to the federally protected rights of Plaintiff.

14

40. Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorney fees and litigation expenses and costs of this action

## COUNT IV: RETALIATION FOR REQUESTING A TRANSFER AWAY FROM THE HARASSMENT

41. The above paragraphs are incorporated by reference.

42. Plaintiff's continued harassment and continued pay theft and restrictions from the use of the company's equipment   following his request for a transfer constitute illegal retaliation under the ADA and for actions occurring on or after January 1, 2009, violates the ADA Amendments Act of 2008 (ADAAA).

43. Said retaliatory harassment and discrimination were done with malice and and reckless indifference to Plaintiff's federally protected rights.

44. Said retaliatory harassment and discrimination entitle him to recover front pay (including under 42 USC§12203 and  42 USC 2000e-5(g)(1)), back pay,  and future pecuniary losses.

45 Said retaliatory harassment entitles the Plaintiff to recover attorney fees and costs

46. Said retaliatory harassment entitles the Plaintiff to other equitable relief and he requests the following:

15

a. The institution of an anti-discrimination educational program approved by the New Hampshire Commission for Human Rights for all of Defendant's New Hampshire employees, which educational program includes specific and separate components for, and examples of, all types of employment discrimination recognized under federal and New Hampshire law, including all statutes of limitations and remedies; and including internal-to-respondent complaint procedures, rights and remedies for claims of discrimination and retaliation, for a period of five years, which internal procedure includes an optional independent (not controlled by respondent) hotline for employee discrimination complaints, all paid for by Defendant

b. That the above educational program be provided live, once a year, for five years, for all employees, and a video of that live program shall be made available, during paid work time, to each new subsequent hire as part of the orientation training; and, that annual reports attesting to the same be made to the New Hampshire Commission for Human Rights.

C. That on an annual basis, the employer shall distribute a written anti-discrimination policy approved by the New Hampshire Commission for Human Rights, along with a fact sheet stating the statutes of limitations for filing with the HRC and the Equal Employment Opportunity Commission (EEOC) and both agencies' respective phone numbers, email addresses and postal addresses.

47.  Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorney fees and litigation expenses and costs of this action.

## COUNT V: NEW HAMPSHIRE WAGE CLAIM

48. The above paragraphs are incorporated by reference.

49. The non payment of Plaintiff's work for the "add ons" for "non obvious" damage constitutes unpaid wages;

50. In addition, the failure to pay to the plaintiff the signing bonus of $1000 constitutes unpaid wages.

51. Pursuant to NH RSA 275:53(I), Plaintiff asserts his right to his wages, pursuant to NH RSA 275:53(III) and RSA 275:44; Plaintiff asserts his right to attorney fees and costs and further, as his wages have remained unpaid, without good cause, for more than ten days, he asserts his rights to double damages under the liquidated damages provision of RSA 275:44(IV).

## COUNT VI WRONGFUL (CONSTRUCTIVE)TERMINATION

52. The above paragraphs are incorporated by reference.

53. Plaintiff's requests to be transferred away from his harassers, to be provided the tools by which he could accurately record his working hours and tasks, for the halting of his being precluded from access to the machines required for his work, for the unfair assignments, for his unpaid signing all constituted conduct done in furtherance of the public policy of New Hampshire.

54. The treatment to which Plaintiff was subjected rendered his working conditions so difficult and intolerable that a reasonable person would feel forced to resign, as the adverse working conditions were ongoing, repetitive, pervasive, and severe.

55. The treatment to which Plaintiff was subjected was performed in bad faith, in retaliation and with malice.

56. Plaintiff was reasonable to resign and his resignation was forced by the above-described circumstances and constitutes wrongful constructive termination under New Hampshire law (*LaCasse v. Spaulding Youth Center*, 154 N.H. 246 (2007).

57. Plaintiff seeks compensatory damages flowing from his wrongful termination

58. Because of the cruelty and malice involved in forcing Plaintiff's termination, enhanced compensatory damages are also sought.

## COUNT VII WHISTEBLOWER'S PROTECTION ACT

59. The above paragraphs are incorporated by reference.

60. Plaintiff's complaints about his discriminatory and retaliatory treatment and harassment, and the Employer's failure to pay to him his signing bonus or his accurate wages constitute a report under N.H.R.S.A 275-E:2, I (a) and constitute objections under N.H.R.S.A. 275-E:2, I (b).

61. As a result of those violations, Plaintiff was discriminated against and constructively terminated and requests his lost pay and attorney fees under N.H.R.S.A. 275-E:2(II).

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. The above paragraphs are incorporated by reference.

63. The actions of Ron Verdonck above described were done intentionally to cause emotional distress to the Plaintiff and did so.

64. Because of the extreme cruelty, Plaintiff was forced to leave the employ of Salem Ford and suffered lost pay and benefits.

65. As a result, the Plaintiff did suffer emotional distress which is compensable under New Hampshire law.

66. In addition to the damages payable to the Plaintiff for the emotional distress resulting from Verdonck's actions, Plaintiff also seeks enhanced compensatory damages because of the nature of the intentional, malicious acts of Verdonck.

### WHEREFORE.

1. Plaintiff requests a **jury trial** on all matters so triable.

2. Plaintiff seeks damages for emotional distress, pain and suffering, embarassment and humiliation and loss of enjoyment of life under Counts I, II, III, VI, and VIII.

3. Plaintiff seeks lost pay and benefits, back pay and front pay, inclusive under Counts I, II, III, IV, VI, VII and VIII.

4. Plaintiff seeks his unpaid wages, doubled, under Count V.

5. Plaintiff seeks attorney fees and costs under Counts I, II, III, IV, V, and VII.

6. Plaintiff seeks punitive damages under Counts I, II, and III.

7. Plaintiff seeks enhanced compensatory damages under Counts VI and VIII.

8. Plaintiff seeks the equitable relief specified in Count IV.

Respectfully submitted,
Roy Bellofatto, Plaintiff,
by his Attorney

*Nancy Richards-Stower*

Nancy Richards-Stower, NHB #2147
Law Offices of Nancy Richards-Stower
32 Daniel Webster Highway, Suite 7
Merrimack, NH 03054
603-881-3312
nrichardssto@igc.org
www.jobsandjustice.com

Nashua, NH 03060

John F. Kennedy Fed Bldg
Government Ctr, Room 475
Boston, MA 02203

On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 523-2010-00103 | CHARLES H. JORDAN, Investigator | (617) 565-2141 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Enclosures(s)

Robert L. Sanders,
Area Office Director

APR 0 8 2011

(Date Mailed)

cc:

**CHARGING PARTY REPRESENTATIVE**
Nancy Richards-stower, Esq.
LAW OFFICES OF NANCY RICHARDS-STOWER
40 Whittier Drive
Scituate, MA 02066

**RESPONDENT REPRESENTATIVE**
Debra Weiss Ford, Esq.
JACKSON LEWIS, LLP
100 International Drive – Suite 363
Portsmouth, NH 03801

Attachment A